UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WUNDERWERKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DUAL BEVERAGE COMPANY LLC, et al.,<br><br>Defendants. | Case No.  21-cv-04980-SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Dkt. No. 16 |

On November 5, 2021, the Court heard oral argument on plaintiff's motion for a preliminary injunction.  Dkt. No. 17.  Plaintiff Wunderwerks, Inc. ("plaintiff" or "Wunderwerks") alleges defendants Dual Beverage Company LLC ("DBC"), WNDER, LTD ("Wnder"), and DOES 1-10, collectively "defendants," infringe plaintiff's trademark and should be preliminarily enjoined from doing so.  Dkt. Nos. 1 and 17.  Having considered the papers and arguments made, the Court hereby DENIES plaintiff's motion.

## BACKGROUND

Plaintiff's complaint (Dkt. No. 1 at 1) alleges five causes of action against defendants:

 (1) Federal Trademark Infringement under 15 U.S.C. § 1114;

(2) Federal False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A);

(3) Common Law Trademark Infringement;

(4) California Statutory Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; and

United States District Court
Northern District of California

1    (5) Declaratory judgment that Trademark Reg. No. 6,198,393 is valid and enforceable.

2    Plaintiff Wunderwerks was founded in September, 2019, as a wholly owned subsidiary of

3    parent company Radix Labs, Inc. ("Radix"), incorporated in California.  Dkt. No. 20 at ¶ 9 (Chialtas

4    Decl.).  Radix is based in Napa, California, and was founded in 2018.  *Id.* at ¶ 3.  Radix began to

5    sell "all-natural, ***uninfused***[1] sparkling fruit beverages under the word mark WUNDER" in April,

6    2019, to customers in California and Florida.  *Id.* at ¶ 4, referencing Dkt. No. 20-1 (Invoices)

7    (emphasis added).

8    On September 14, 2019, Radix assigned its rights and interests in the "WUNDER" mark to

9    plaintiff.  Dkt. No. 20 at ¶ 10; *see* Dkt. No. 19-1 Exhibit A (Assignment and Transfer Agreement).

10   Plaintiff maintains it has "continued to develop and refine the line of uninfused . . . beverages" and

11   has registered several domain names in connection with uninfused beverages.  Dkt. No. 19 at ¶ 9.

12   On October 24, 2019, plaintiff filed a trademark application, U.S. Serial No. 88667500, with the

13   USPTO to register the mark "WUNDER" (the '500 application).  Dkt. No. 19-1 Exhibit E.  The

14   '500 application matured to Registration No. 6,198,393 (the '393 Registration) on November 17,

15   2020, and has a first use date of April 1, 2019.  Dkt. No. 19-1 Exhibit F (Registration certificate).

16   The '393 Registration indicates "CLASS 32: Fruit Juices Non-alcoholic sparkling fruit juice

17   beverages; Non-alcoholic carbonated beverages; Concentrates and powders used in the preparation

18   of energy drinks and fruit-flavored beverages."  *See* WUNDER, Registration No. 6,198,393.

19   Around July 2020, plaintiff launched its ***infused*** beverage product, with sales alleged to have

20   begun thereafter around July 2020.  Dkt. No. 26 at 8[2] (Opposition); Dkt. No. 29 at 5 (Reply); Dkt.

21   No. 27-4 Exhibit D (plaintiff's Instagram post of June 27, 2020); Dkt. No. 27-5 Exhibit E (plaintiff's

22   Instagram post of July 10, 2020).  This "separate line of infused . . .  beverages also sold under the

23   WUNDER mark" is available in eight-ounce cans in three flavors.  Dkt. No. 29-3 at ¶ 10.  Plaintiff

24

25   [1] The term "uninfused," as used by plaintiff, refers to products containing "no [cannabidiol]
26   CBD or [tetrahydrocannabinol] THC, or anything else derived from the Cannabis plant or hemp
     therefrom."  Dkt. No. 20 at ¶ 7.  The term "infused," as used by plaintiff, refers to products
     containing "an extract or [] otherwise supplemented with material from the Cannabis plant."  Dkt.
27   No. 19 at ¶ 6 (Peterson Decl.).

28   [2] For ease of reference, citations to page numbers refer to the ECF branded page number in
     the upper right corner of the page.

United States District Court
Northern District of California

asserts the infused beverages and uninfused beverages differ only by the CBD and THC additives and "[n]one of the ingredients in the uninfused beverage have been substituted." *Id.* at ¶¶ 8-9.  For example, plaintiff asserts plaintiff's infused Lemon Ginger flavored beverage and Radix's uninfused Lemon Ginger flavored beverages differ only by added CBD and THC.  *Id.*  Plaintiff admits the WUNDER mark has not been used since the "end of 2019" in connection with uninfused beverages.  Dkt. No. 29 at 9.  However, plaintiff maintains that while Radix developed only a single flavor of uninfused beverage (Lemon Ginger), plaintiff is currently developing further flavors of uninfused beverages.  Dkt. No. 29-3 at ¶¶ 5-7 (Chialtas Reply Decl.); See Dkt. No. 29-12 Exhibit L (taste-test survey indicating Q3 2021).  Plaintiff maintains it is "in the process of securing a manufacturer so that it can release [uninfused beverages] in early 2022."  Dkt. No. 29 at 10; Dkt. No. 29-3 at ¶ 7.

In 2021, plaintiff introduced a product having "larger amounts of extracts from the Cannabis plant," in three flavors, under the sub-brand "HIGHER VIBES 20."  *Id.* at ¶ 11.  Both the WUNDER brand beverages and HIGHER VIBES 20 beverages are available at plaintiff's website (www.findwunder.com) via online orders or from retail locations.  *Id.* at ¶ 12.  To date, plaintiff has spent about $165,000 on advertising and has "actively marketed and promoted its . . . [infused] beverages throughout the United States."  *Id.* at ¶ 15.

Defendant DBC was founded in April 2019, and defendant Wnder was formed months later "as the holding company for DBC."  Dkt. No. 26 at 7 (Defendants' Opposition).  Defendants selected the brand name "W*NDER" for a line of beverages, wherein the "*" character stands for an "abstract representation of a leaf."  *Id.* (referencing Dkt. No. 27 at ¶ 3).

On July 17, 2019, defendant DBC filed an intent-to-use trademark application, U.S. Serial No. 88519040, with the USPTO to register the mark "W*NDER" (the '040 application) in connection with uninfused beverages.  Dkt. No. 28-1 Exhibit 2-A.  With respect to beverages, the '040 application pertains to "[n]on-alcoholic beverages, namely, carbonated beverages, ***carbonated beverages enhanced with plant extracts***, carbonated beverages enhanced with vitamins, carbonated beverages with fruit flavor with none of the foregoing comprised of any oils, extracts, derivatives or ingredients from Cannabis sativa L with a delta-9 tetrahydrocannabinol (THC) content of more than 0.3 percent on a dry weight basis and none of which contain cannabidiol (CBD)."  U.S.

United States District Court
Northern District of California

Trademark Application Serial No. 88/519040 (filed July 17, 2019) (emphasis added).

In January, 2020, defendants launched the "W*NDER" branded beverages, via online and "brick-and-mortar" distribution. Dkt. No. 27 at ¶¶ 5-6. Defendants' products for sale include CBD-infused beverages. *See*, *e.g.*, Dkt. No. 18-1 Exhibits 1-6; *See*, *e.g.*, www.wnder.com (defendants' website). Defendants assert they are also developing a "non-CBD infused line of beverages."[3] *Id.*

In late February 2021, defendants learned of plaintiff Wunderwerks and the WUNDER brand upon receipt of plaintiff's February 23, 2021 cease-and-desist letter. Dkt. No. 27 at ¶ 7 (Robinson Decl.); Dkt. No. 18 at ¶ 8 (Kowsari Decl.); Dkt. No. 18-1 Ex. 10 (Plaintiff's cease and



desist letter). Images of plaintiff's and defendants' product marks are shown below:

Defendants filed a Petition to Cancel No. 92076715 with the USPTO on March 18, 2021, in connection with plaintiff's '393 Registration. Dkt. No. 1 at ¶ 31; Dkt. No. 18 at ¶ 9; *see* Cancellation No. 92076715, USPTO (filed March 18, 2021).[4]

On June 28, 2021, plaintiff filed the instant action and this Motion for Preliminary Injunction on August 23, 2021. Dkt. Nos. 1 and 17. Plaintiff contends defendants' use of the mark "W*NDER" will cause consumer confusion in the reverse direction relative to Wunderwerks' "WUNDER" mark,

---

[3] The meaning of "non-CBD infused" is not clear. For example, it is not clear whether this refers to THC-infused products.

[4] Available at www.ttabvue.uspto.gov/ttabvue/v?pno=92076715&pty=CAN

United States District Court
Northern District of California

1    as plaintiff is a relatively smaller company.[5]

2

3                                  **LEGAL STANDARD**

4            To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on

5    the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the

6    balance of equities tips in plaintiff's favor, and (4) an injunction is in the public interest.  *Winter v.*

7    *Natural Res. Def. Council*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  Courts have

8    also applied an alternative "sliding scale" or "serious questions" test, requiring the plaintiff raise

9    "serious questions going to the merits" and showing "the balance of hardships tip[s] sharply in

10   plaintiff's favor."  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir.

11   2011); *id.* at 1135 (stating plaintiff must also show a "likelihood of irreparable injury and that the

12   injunction is in the public interest.").  The sliding scale approach allows courts to balance the factors,

13   offering flexibility where, for example, the plaintiff makes a weaker showing of likelihood of

14   success, but a strong showing of irreparable harm.  *Id.* at 1131.  Regardless of the approach, a

15   preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing

16   that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22; *see also Earth Island Inst. v.*

17   *Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (Plaintiffs "face a difficult task in proving that they are

18   entitled to this 'extraordinary remedy[.]'").

19           A preliminary injunction "should not be granted unless the movant, *by a clear showing*,

20   carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation

21   omitted) (emphasis in original).  However, "[d]ue to the urgency of obtaining a preliminary

22   injunction at a point when there has been limited factual development, the rules of evidence do not

23   apply strictly to preliminary injunction proceedings."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*

24   *Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (internal citation omitted).

25

26   _____

27           [5] Reverse confusion  "is the misimpression that the junior user is the source of the senior
     user's goods" where, for example, "the junior user saturates the market and 'overwhelms the senior
28   user.'"  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23.10 (5th ed.
     2019).  *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**DISCUSSION**

Plaintiff requests a preliminary injunction restraining "defendants . . ., their agents, and [others] from using the "W*NDER" mark or any mark confusingly similar to Wunderwerk's WUNDER mark in connection with wellness and lifestyle beverages."  Dkt. No. 16 at 1 (Plaintiff's Notice of Motion).  Defendants argue plaintiff is not likely to succeed on the merits, the balance of equities tips in defendants' favor, defendants will suffer irreparable harm, and an injunction is not in the public interest.  *See* generally Dkt. No. 26 (Defendants' Opposition).

**I.      Likelihood of Success on the Merits**

For the reasons discussed during the November 5, 2021 hearing, the Court agrees with defendants that plaintiff has failed to carry its burden of showing likelihood of success on the merits. These reasons include but are not limited to:

(1) There are serious questions going to the validity of plaintiff's mark due to the fact that it encompasses an illegal product – rendering plaintiff's likelihood of success on the merits of its federal claims unlikely.[6]  Marijuana and derived substances, including tetrahydrocannabinols (THC), are designated as Schedule I drugs.  21 U.S.C. § 812(c)(10) and 21 CFR § 1308.11.[7] Excluded from that designation, however, is "any material, compound, mixture, or preparation that falls within the definition of hemp[8] set forth in 7 U.S.C. 1639o)."  21 CFR § 1308.11.  During the

---

[6] *See In re Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. 2016) (If a mark "encompasses" illegal goods, that alone can provide a basis for refusing the mark's registration.);  *see also Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, (N.D. Cal. 2019) (prior use cannot be established for a mark on an illegal product).

[7] "(i) Meaning tetrahydrocannabinols, except [hemp], naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant . . ." 21 CFR § 1308.11.

[8] Hemp is excepted from Schedule I, defined as "the plant [] and any part of the plant . . ." including "a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o (West). "The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

November 5, 2021 hearing plaintiff admitted its products contain CBD and THC derived from marijuana, not hemp.

In May, 2019, the PTO discussed goods derived from marijuana and hemp in an Examination Guide, stating: "[i]f an applicant's goods are derived from 'hemp' as defined in the 2018 Farm Bill, the identification of goods must specify that they contain less than 0.3% THC" thus rendering the goods "compliant with federal law," and removing a basis for refusal of trademark registration for applications filed on or after December 20, 2018. *Examination of Marks for Cannabis and Cannabis-related Goods and Services after Enactment of the 2018 Farm Bill*, USPTO Examination Guide 1-19, May 2, 2019.[9]

Based on the evidence presented, the Court finds the "WUNDER" federally registered mark is likely to be invalid because plaintiff's products encompass products illegal under federal law, and thus <u>lawful</u> use in commerce cannot be established.

(2) There are serious questions going to the validity of plaintiff's mark due to issues around prior use – rendering plaintiff's likelihood of success on the merits of its federal and state[10] law claims unlikely. A trademark is a "symbol of good will" and accordingly cannot be assigned in gross, and any assignment must also include a "transfer of the goodwill to which the mark pertains."

_____

[9] Available at www.uspto.gov/sites/default/files/documents/Exam%20Guide%201-19.pdf.

[10] While California state law trademark infringement claims generally follow "federal law," (Cal. Bus. & Pro. Code § 14272 (West); See, e.g., *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) ("…infringement claims subject to the same test.")), the requirements for protection under state and federal law can be characterized as "parallel but separate" (J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:8 (5th ed.)). See also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:8 (5th ed.) ("Federal registration and state common law rights stand independent of each other.").
Regarding plaintiff's state law claims (3) and (4), the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California business and Professions Code 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *see Grupo Gigante SA De CV v. Dallo & Co.*, Inc., 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis."); *see Starbuzz Tobacco, Inc. v. Melnick*, No. SACV150224DOCRNBX, 2015 WL 12656925, at 4* (C.D. Cal. July 31, 2015) ("This also applies to common law trademark infringement claims.").

*See Visa, U.S.A., Inc. v. Birmingham Trust Nat. Bank*, 696 F.2d 1371, 1375 (Fed. Cir. 1982);  *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) ("[i]t is not necessary that the entire business or its tangible assets be transferred; it is the goodwill of the business that must accompany the mark.").  "A mere recitation in the assignment agreement that the mark was assigned 'together with the goodwill of the business symbolized by the mark' is not sufficient to establish a valid transfer."  *The Money Store v. Harriscorp Finance*, Inc., 689 F.2d 666, 676 (7th Cir.1982); *see also Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003) (citing *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1350 (E.D. N.Y. 1994 ("[T]he test is simply whether the transaction is such that the assignee can 'go on in real continuity with the past.'").  Goodwill associated with a totally different product is not sufficient to show a valid assignment.  *See PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 289-90 (8th Cir. 1969); *see Independent Baking Powder Co. v. Boorman*, 175 F. 448, 455 (C.C.D. N.J. 1910) (The Court found the "substitution of one important ingredient for another" would forfeit trademark rights, in the context of alum and phosphate baking powders.); *see W. T. Wagner's Sons Co. v. Orange Snap Co.*, 18 F.2d 554, 555 (5th Cir. 1927) (The court considered ginger ale and fruit beverages to be different goods, because their "general and essential characteristics … are so different that a person desiring one … would not be likely to be misled into accepting the other.").

Defendants argue plaintiff offers only THC-infused beverages, and the "entire nature of the product . . . was fundamentally altered from what plaintiff now claims was sold by Radix Labs." Dkt. No. 26 at 17.  Defendants also refer to California Business & Professions Code § 26080[11] in asserting plaintiff's products can only be sold legally though "licensed and regulated dispensaries" and "could not legally be sold or transported across state lines."  Dkt. No. 26 at 8, 18.  Defendants assert the addition of THC precludes "legitimate use in interstate commerce" and invalidates the federal trademark rights associated with plaintiff's '393 registration.  Dkt. No. 26 at 18.  Defendant

---

[11]  "(a) This division shall not be construed to authorize or permit a licensee to transport or distribute, or cause to be transported or distributed, cannabis or cannabis products outside the state, unless authorized by federal law. (b) A local jurisdiction shall not prevent transportation of cannabis or cannabis products on public roads by a licensee transporting cannabis or cannabis products in compliance with this division."  Cal. Bus. & Prof. Code § 26080 (West).

United States District Court
Northern District of California

also refers to the "psychoactive effects" of THC, which require "an entirely new type of customer, separate and distinct . . . channels of trade, and an entirely new legal and regulatory framework." Dkt. No. 26 at 17.

Plaintiff has not established its uninfused and infused beverages are essentially the same. Accordingly, the Court finds questions exist as to the Radix-Wunderwerks assignment and transfer of goodwill.

(3) There are serious questions as to consumer confusion. Prior to the November 5, 2021 hearing, the Court understood plaintiff was asserting likelihood of confusion between plaintiff's *infused* products and defendants' *infused* products. However, during the hearing plaintiff's argument seemed to change such that plaintiff was alleging confusion between plaintiff's *uninfused* beverages and defendants' *infused* beverages. If this is indeed plaintiff's argument, plaintiff did not offer *any* evidence whatsoever as to what its uninfused products look like in order to conduct a likelihood of confusion analysis.

In sum, the Court finds plaintiff failed to carry its burden with respect to likelihood of success on the merits.

## II.   **Irreparable Harm**

Plaintiff must establish it is likely to suffer irreparable harm, and more particularly, plaintiff must establish "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Irreparable harm is presumed upon a showing of "a violation" or a showing of "likelihood of success on the merits." *See* 15 U.S.C.A. § 1116(a) (West); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).

Plaintiff asserts it has "lost and will continue to lose significant business opportunities," and "efforts to expand its business . . . [is] being thwarted by Defendants." Dkt. No. 17 at 26. Defendants argue plaintiff is selling an illegal product, and therefore cannot show a likelihood of success on the merits, and thus is "not entitled to any such presumption" of irreparable harm as

1   provided by 15 U.S.C. § 1116(a) . Dkt. No. 26 at 21.

2       The Court finds plaintiff has not established irreparable harm beyond speculative concerns.

3   Further, because the Court has already concluded plaintiff is not likely to succeed on the merits,

4   irreparable harm is not presumed.

5

6   **III.   Balance of Equities**

7       "The purpose of such interim equitable relief is not to conclusively determine the rights of

8   the parties but to balance the equities as the litigation moves forward." *Trump v. International*

9   *Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citations omitted).

10      Plaintiff asserts (1) defendants' "plans to expand" will likely destroy plaintiff's "ability to

11  market the WUNDER brand," and (2) defendants "are not entitled to relief in equity" because of

12  their choice to use the W*NDER mark. Dkt. 17 at 26-27.

13      Defendants argue an injunction would cause them irreparable harm, "as DBC would be

14  forced to halt sales," impacting cash flow and "result[ing] in DBC's inability to continue operation."

15  Dkt. No. 26 at 25, referencing Dkt. No. 27 at ¶¶ 22-23 (Robinson Decl.) (defendant points to

16  $110,000 in product inventory costs with a retail value of $450,000). Defendants also assert

17  "momentum is crucial" for a startup in the competitive carbonated beverage industry. *Id*.

18      If granted, injunctive relief would prevent defendants from using the W*NDER mark and

19  from providing goods in commerce bearing the W*NDER mark, which would effectively stop all

20  of defendants' cash flow. Plaintiff's hardships include, potentially, at least some confusion by

21  consumers and possible loss of sales, but the impact on plaintiff's cash flow is speculative. While

22  both parties point to at least some potential hardships, the Court finds plaintiff has not made a clear

23  showing that the balance of equities tips clearly and strongly in their favor.

24

25  **IV. Public Interest**

26      Plaintiff asserts "[t]he public interest favors a preliminary injunction to prevent further

27  confusion" amongst potential customers. Dkt. No. 17 at 27, citing *Internet Specialties W., Inc. v.*

28  *Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). Plaintiff further asserts

United States District Court
Northern District of California

10

"[c]onfusion is likely to only increase in the future due to [d]efendants' ongoing efforts" and that "the public has a strong interest in ensuring the integrity of the USPTO's trademark registration system."  Dkt. No. 17 at 27-28.

As indicated by plaintiffs (Dkt. No. 29 at 4), defendants did not address public interest in their reply (Dkt. No. 26).  However, the Court finds the public interest does not weigh heavily in plaintiff's favor because, although plaintiff's products may be legal under state law, the products offered by plaintiff are illegal under federal law.

## CONCLUSION

For the foregoing reasons and for good cause shown, plaintiffs have not shown that an injunction should issue. Accordingly, the Court hereby DENIES plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED**.

Dated: December 6, 2021

SUSAN ILLSTON
United States District Judge